# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: FLUOROQUINOLONE PRODUCTS LIABILITY LITIGATION | MDL No. 15-2642 (JRT) |

This Document Relates to:

**Civil No. 15-3417 (JRT)**
*Alan Henness, et al. v. Johnson & Johnson, et al.*

**Civil No. 15-3595 (JRT)**
*Michael Cepuran v. Bayer Healthcare Pharmaceuticals, Inc., et al.*

**MEMORANDUM OPINION AND ORDER ON MOTIONS TO DISMISS**

**Civil No. 16-1443 (JRT)**
*Rhonda Cervantes v. Bayer HealthCare Pharmaceuticals, Inc., et al*

**Civil No. 16-1501 (JRT)**
*Deborah Haney v. Bayer Healthcare Pharmaceuticals, Inc., et al.*

**Civil No. 16-1515 (JRT)**
*Arturo Rendon v. Bayer Healthcare Pharmaceuticals, Inc., et al.*

**Civil No. 16-1571 (JRT)**
*Gladys Wilson v. Bayer Healthcare Pharmaceuticals, Inc., et al.*

Andrea S. Hirsh, **HERMAN GEREL, LLP**, 230 Peachtree Street, Suite 2260, Atlanta, GA 30303; Yvonne M. Flaherty, **LOCKRIDGE GRINDAL NAUEN PLLP**, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401; Bill Robins, III, **HEARD ROBINS CLOUD LLP**, 808 Wilshire Boulevard, Suite 450, Santa Monica, CA 90401; Russell W. Budd, **BARON & BUDD, P.C.**, 3102 Oak Lawn Avenue, Suite 1100, Dallas, TX 75219, for plaintiffs.

Andrew K. Solow and Lori B. Leskin, **KAYE SCHOLER LLP**, 250 West 55th Street, New York, NY 10019; Cicely R. Miltich, **FAEGRE BAKER**

**DANIELS LLP**, 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402, for Bayer Healthcare Pharmaceuticals Inc. and Bayer Corp.

Defendants Bayer Corporation and Bayer Healthcare Pharmaceuticals, Inc., (collectively "Defendants") move to dismiss the claims of seven plaintiffs in the Fluoroquinolone Multi-District Litigation ("MDL") based on the statutes of repose in place in Illinois, Oregon, Tennessee, and Texas. (*See* App. at 12-19, Aug. 1, 2016, Docket No. 237.)[1] Plaintiffs do not oppose the motion to dismiss with regard to one plaintiff,[2] and therefore, that plaintiff's claims are properly dismissed.[3] That leaves the claims of six plaintiffs for the Court to consider on this motion, including: three Illinois residents, who filed in Illinois[4] and Oklahoma,[5] (*id.*, Tables 1.1, 1.2); one Oregon resident, who filed in Oklahoma,[6] (*id.*, Table 1.2); and two Texas residents, who filed in

---

[1] Initially all defendants in the Fluoroquinolone MDL moved to dismiss the claims of a broader group of plaintiffs; however, Defendants Johnson & Johnson, Janssen Research & Development, LLC, and Janssen Pharmaceuticals, Inc., withdrew their portion of the motion. (*See Pro Tanto* Notice of Withdrawal, Feb. 1, 2017, MDL No. 15-2642, Docket No. 374.) Accordingly, the Court will only consider the motion with regard to the plaintiffs who have alleged claims against Bayer Corporation or Bayer Healthcare Pharmaceuticals, Inc.

[2] Gladys Wilson, No. 16-1571. (*See* Pls.' Mem. in Opp'n at 10, Sept. 1, 2016, MDL 15-2642, Docket No. 257.)

[3] Additionally, four of the plaintiffs initially named in this motion have since voluntarily dismissed their claims. The Court has already granted motions for voluntary dismissal with regard to Betty Conley, Wendy Slusser, and Kenneth and Artie Seabolt, and their claims need not be discussed further. (Order for Dismissal, Aug. 31, 2016, Case No. 16-1374, Docket No. 13; Order for Dismissal, Aug. 31, 2016, Case No. 16-1554, Docket No. 13; Order for Dismissal, Oct. 6, 2016, Case No. 15-3920, Docket No. 33.)

[4] Michael Cepuran, No. 15-3595. (App., Table 1.1.)

[5] Deborah Haney, No. 16-1501; Rhonda Cervantes, No. 16-1443. (App., Table 1.2.)

[6] Arturo Rendon, No. 16-1515. (App., Table 1.2.)

Pennsylvania,[7] (*id.*, Table 1.4).  Because the Court finds Illinois law provides for a fraudulent concealment exception to its statute of repose, and questions remain over whether the Oregon statute of repose applies to the Oregon-resident plaintiff, the Court will deny the motion with regard to the Illinois-resident and Oregon-resident plaintiffs.  However, the Court finds that the Texas statute of repose applies to the two Texas-resident plaintiffs and will grant the motion with regard to those plaintiffs.

## ANALYSIS

### I. STANDARD OF REVIEW

In reviewing a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face."  *See, e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp.*, 550 U.S. at 555 (internal quotation marks omitted).  Rule 12(b)(6) also authorizes the Court to dismiss a claim on the basis of a dispositive legal issue.  *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

---

[7] Alan and Samantha Henness, No. 15-3417.  (App., Table 1.4.)

## II.   ILLINOIS STATUTE OF REPOSE

Defendants contend that the Illinois statute of repose bars the strict products liability claims alleged by three Illinois-resident plaintiffs who filed in Illinois and Oklahoma.  For the purposes of this motion, Plaintiffs do not dispute that Illinois law applies to these cases.  (Pls.' Mem. in Opp'n at 3, Sept. 1, 2016, MDL No. 15-2642, Docket No. 257.)  Illinois's statute of repose restricts any strict "product liability action" commenced after (1) 12 years from the date of first sale to any party, (2) 10 years from the first sale to a consumer, or (3) 8 years from the date of injury. [8]   735 Ill. Comp. Stat. 5/13-213.  Plaintiffs do not dispute that the initial sale and injuries occurred prior to those time periods; rather, they assert their claims are still viable due to Defendants' fraudulent concealment.

In *DeLuna v. Burciaga*, the Illinois Supreme Court found a fraudulent concealment exception to the statute of repose for legal malpractice claims.  857 N.E.2d 229, 240 (Ill. 2006).  The court relied on an Illinois statutory provision that states:

> Fraudulent concealment.  If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the

---

[8] While the statutory language suggests that all "product liability action[s]" are subject to the statute of repose, both parties agree that it only applies to strict liability actions.  (Defs.' Mem. in Supp. at 17 n.19, Aug. 1, 2016, MDL No. 15-2642, Docket No. 237; Pls.' Mem. in Opp'n at 3 n.2.)  The amendment that extended the statute of repose to all product liability actions, rather than just strict liability actions, was found unconstitutional and not severable, and thus, was struck down. *Best v. Taylor Mach. Works*, 689 N.E.2d 1057, 1104-06 (Ill. 1997).  The prior version, which limited strict liability actions, remains in force.  *See Masters v. Hesston Corp.*, No. 99 C 50279, 2001 WL 567736, at *7 n.1 (N.D. Ill. May 23, 2001).

person entitled to bring the same discovers that he or she has such cause of action, and not afterwards.

735 Ill. Comp. Stat. 5/13-215. The court noted that the provision states "an action," and not any particular kind of action, and the position of the provision, stating:

> the legislature chose to situate section 13-215 **after** a series of other sections-containing both statutes of limitations and statutes of repose- including provisions pertaining to actions for medical malpractice, product liability, acts or omissions in construction practice, criminal acts, acts or omissions in public accounting, and legal malpractice.

*DeLuna*, 857 N.E.2d at 240. Based on this positioning of the fraudulent concealment provision, the court "inferred that section 13-215 applies to all of the preceding sections." *Id*. The court specifically considered whether § 13-215 applied to statutes of repose along with statutes of limitations, and determined that it did. *See id.* (stating, "[t]he question, then, is whether the legislature intended section 13-215 as a tolling provision or exception applicable to statutes of repose, as well as statutes of limitations," and finding "no reason why section 13-215 should not apply to statutes of repose"). Although the court relied on the attorney-client relationship in justifying the tolling of the particular statute of repose at issue, there is no textual basis to find that the fraudulent concealment provision applies to the legal malpractice statute of repose but not the product liability statute of repose. Thus, the Court finds that under *DeLuna*'s statutory interpretation, the fraudulent concealment exception applies to the products liability statute of repose.[9]

---

[9] Defendants rely on *Dohra v. Alcon (Puerto Rico), Inc.*, in which the Northern District of Illinois found that § 13-215 did not apply to the products liability statute of repose, but that case was decided prior to *DeLuna* and involved a federal district court predicting how the Illinois Supreme Court would rule. No. 92 C 2624, 1994 WL 395000, at *2-4 (N.D. Ill. July 26, 1994).

(Footnote continued on next page.)

Defendants also argue that even if there is a fraudulent concealment exception to the Illinois statute of repose, Plaintiffs have not pleaded facts sufficient to meet exception. Allegations of fraudulent concealment must satisfy the Rule 9(b) particularity standard. *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995-96 (8th Cir. 2007). "This means the who, what, when, where, and how: the first paragraph of any newspaper story." *Id.* (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). Generally, to establish fraudulent concealment under Illinois law, a plaintiff must "show affirmative acts by the defendant which were designed to prevent, and in fact did prevent, the discovery of the claim." *Gredell v. Wyeth Labs., Inc.*, 803 N.E.2d 541, 548 (Ill. App. Ct. 2004).

Defendants contend that Plaintiffs cannot rely on the same fraud that underlies their cause of action to establish fraudulent concealment, but must show some affirmative, separate attempt to hide liability. However, Defendants cite *Gredell*, in which the Illinois Appellate Court found that the plaintiff's allegations that the defendants fraudulently misrepresented a product's effectiveness without scientific support were insufficient to find fraudulent concealment not only because the same actions formed the basis of the plaintiff's consumer fraud action, but also because those

---

(Footnote continued.)

The *Dohra* court relied on *Cunningham v. Huffman*, 609 N.E.2d 321 (Ill. 1993), in which the Illinois Supreme Court declined to adopt a continuous course of treatment exception to the medical malpractice statute of repose without any statutory support, to find that the Illinois Supreme Court would not extend a fraudulent concealment exception to the statute of repose without a clear intention to do so. *Id.* In light of 735 Ill. Comp. Stat. 5/13-215 and the Illinois Supreme Court's reasoning in *DeLuna*, the prediction in *Dohra* is no longer supported.

actions "d[id] not . . . tend to conceal violations of the Consumer Fraud Act." *Id.* at 549. Accordingly, "[f]raudulent misrepresentations which form the basis of the underlying cause of action do not constitute fraudulent concealment under section 13-215," unless "the misrepresentations also tended to conceal the cause of action." *Foster v. Plaut*, 625 N.E.2d 198, 204 (Ill. App. Ct. 1993).

Here, Plaintiffs allege that Defendants' fraud – concealing the true risk and connection between Defendants' drugs and peripheral neuropathy – tended to conceal the cause of action by preventing them from discovering the potential for liability.  Thus, the fact that Plaintiffs rely on the same allegations for their underlying claims and to establish fraudulent concealment is not fatal to Plaintiffs' claims.  Additionally, Plaintiffs have alleged fraudulent concealment with sufficient particularity.  Plaintiffs allege that Defendants engaged in a rebranding scheme in the early 2000s, to market their products for common infections, not just serious infections.  (Second Am. Master Compl. ¶ 118, Aug. 12, 2016, Docket No. 241.)  At the same time, Defendants were allegedly aware of possible side effects, including peripheral neuropathy.  (*Id.* ¶¶ 119-24.)  Plaintiffs allege that Defendants concealed this risk by "focusing on the incidence of relatively benign side effects, such as headaches or dizziness, while concealing the equally common but far more serious symptoms of peripheral neuropathy." (*Id.* ¶¶ 126-32.)  Plaintiffs also allege that Defendants misled regarding the irreversibility of peripheral neuropathy from September 2004 to August 2013 for Levaquin and Cipro, and from August 2012 through August 2013 for Avelox, by stating in product labelling that "patients experiencing symptoms of peripheral neuropathy should discontinue treatment 'in order to prevent the

development of an irreversible condition,'" when in fact, the condition could be irreversible regardless of whether the patient stopped taking the drug. (*Id.* ¶¶ 152-55.) Plaintiffs allege that Defendants in some cases avoided reporting peripheral neuropathy adverse reactions caused by their drugs. (*Id.* ¶¶ 158-61.) Thus, at this stage of litigation, the Court finds that Plaintiffs have sufficiently alleged fraud that tended to conceal their causes of action.

Defendants counter that fraudulent concealment does not apply to Plaintiffs' claims because they were not diligent in pursuing their claims. "Fraudulent concealment is inapplicable where the plaintiff had the ability to obtain the information necessary to pursue his [or her] claim." *Pace Am., Inc. v. Elixir Indus.*, No. 06 C 4661, 2009 WL 211953, at *3-4 (N.D. Ill. Jan. 27, 2009) (finding the plaintiff could not rely on fraudulent concealment because the plaintiff could have weighed the delivered product or verified how the seller was measuring the total weight during their seven year business relationship).[10] Defendants argue that Plaintiffs do not meet the fraudulent concealment standard because, starting in 2004, fluoroquinolones contained warnings about peripheral neuropathy, and even if – as Plaintiffs argue – Defendants did not fully disclose the

---

[10] *See also Varner v. Peterson Farms*, 371 F.3d 1011, 1017-18 (8th Cir. 2004) (applying Arkansas law and finding that the plaintiffs could not toll the limitations period based on fraudulent concealment where plaintiffs were suspicious much earlier, but merely lacked proof until a later date because they did not exercise due diligence); *People v. Coleman*, 794 N.E.2d 275, 293 (Ill. 2002) (stating, in a post-conviction action, "To make a successful showing of fraudulent concealment, the defendant must 'allege facts demonstrating that his opponent affirmatively attempted to prevent the discovery of the purported grounds for relief and must offer factual allegations demonstrating his good faith and reasonable diligence in trying to uncover such matters before trial or within the limitations period'").

extent of the risk, Defendants at least notified Plaintiffs that the drugs could have been the cause of peripheral neuropathy. Defendants argues that Plaintiffs acknowledged some knowledge by alleging that "some aspect of the injury may have been known to Plaintiffs and Plaintiffs' physicians," but that "due to Defendants' intentional concealment, an essential fact to bring their cause of action was unknown." (Second Am. Master Compl. ¶ 180.)

These arguments may be relevant in determining whether Plaintiffs were in fact diligent and could not have discovered the cause of their injury earlier; at this stage, however, Plaintiffs only must allege sufficient facts, taken as true, to support a finding that they were diligent. Plaintiffs allege that their physicians denied or were unaware of the possibility that the fluoroquinolones could have caused their injuries until the FDA's risk disclosure in August 2013, due to "Defendants' omissions from and misrepresentations to the medical community and to the general public," discussed above. (*Id.* ¶ 168.) Accordingly, Plaintiffs allege that they could not have known about the relationship between their peripheral neuropathy and Defendants' drugs until August 2013 because Defendants concealed "the true character, quality, and nature of their [fluoroquinolones]." (*Id.* ¶¶ 175-76.) Plaintiffs have pleaded facts suggesting that they could not have learned of the link between fluoroquinolones and their injuries by exercising ordinary diligence prior to the 2013 FDA disclosure, and thus, the Court finds that Plaintiffs have sufficiently alleged diligence at this stage of proceedings.

In sum, the Court will deny Defendants' motion to dismiss with regard to the Illinois-resident plaintiffs because Plaintiffs' allegations satisfy the statutory fraudulent concealment exception, which applies to the product liability statute of repose.

### III.     TEXAS STATUTE OF REPOSE

Defendants argue that the claims of two Texas-resident plaintiffs, who filed in Pennsylvania, are barred by the Texas statute of repose. Both parties agree that if Texas law governs the Texas residents' claims, they fail under the Texas statute of repose. Thus, the only dispute over these claims is whether Pennsylvania or Texas law applies under Pennsylvania choice-of-law rules.

Pennsylvania applies a "flexible choice of law rule which weighs the interests [its] sister-states may have in the transaction." *Commonwealth v. Eichinger*, 915 A.2d 1122, 1133 (Pa. 2007). Pennsylvania courts consider whether the laws of the relevant states conflict – that is "whether there are relevant differences between the states' laws that would affect the disposition of the litigation." *Taylor v. Mooney Aircraft Corp.*, 265 F. App'x 87, 90 (3d Cir. 2008). If there is a conflict "the court must 'examine the governmental policies underlying each law, and classify the conflict as a true, false, or unprovided-for situation.'" *Id.* at 90 (quoting *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007)). In analyzing the policies underlying the laws, the Court considers only those policies "implicated by that state's contacts with the litigation." *Id.* at 90-91. "A true conflict exists 'when the governmental interests of **both** jurisdictions would be impaired if their law were not applied,'" in which case, "the court should apply

the 'law of the state having the most significant contacts or relationships with the particular issue.'" *Id.* at 91 (quoting *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 n.15 (3d Cir. 1991), then *Garcia v. Plaza Oldsmobile*, 421 F.3d 216, 219 (3d Cir. 2005)). "A false conflict exists when 'only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law," and the court should then "apply the law of the only interested jurisdiction." *Id.* (quoting *Lacey*, 932 F.2d at 187). Finally, in "un-provided for cases in which neither jurisdiction's interests would be impaired if its laws are not applied," the court should apply the law of the place of injury. *Id.* (quoting *Garcia*, 421 F.3d at 220).

Both parties agree that there is a conflict between Texas and Pennsylvania law because Texas has a statute of repose that is implicated here, and Pennsylvania does not. Both parties then argue that the conflict is false: Defendants argue that Texas has an interest in applying its statute of repose, and that Pennsylvania does not have an interest in applying its law to allow the lawsuit; Plaintiffs argue that Pennsylvania has an interest allowing the lawsuit, but that Texas does not.

With regard to Texas's interest in the litigation, Plaintiffs cite a committee report for the bill that amended Texas's statute of repose to include all products rather than just manufacturing equipment. *See* C.S.H.B. 4 78(R) at 1, *available at* http://www.legis.state.tx.us/tlodocs/78R/analysis/pdf/HB00004H.pdf. In the background and purpose section, the report states:

> Texas faces a general environment of excessive litigation. This has resulted in a crisis in access to healthcare as medical providers leave the state or leave the profession altogether. It has also resulted in higher costs to

- 11 -

> patients and consumers, caused companies to locate outside of Texas, disproportionately burdened Texas courts, and even forced some companies into bankruptcy.
>
> C.S.H.B. 4 is a comprehensive civil justice reform bill intended to address and correct problems that currently impair the fairness and efficiency of our court system. . . . In summary, C.S.H.B. 4 provides for various corrective measures that will help bring more balance to the Texas civil justice system, reduce the costs of litigation, and help restore litigation to it[s] proper role in our society.

*Id.* Plaintiffs contend that Texas's interest in its statute of repose was reducing excessive litigation in its court system and protecting in-state companies and keeping them from relocating out of state, not to protect out-of-state businesses sued in foreign jurisdictions. Plaintiffs note that much of the section quoted above discusses correcting problems in the Texas court system, reducing costs of litigation, and preventing excessive litigation.

Defendants counter that Plaintiffs are reading the committee report too narrowly, and that the legislature has an interest in applying its statute of repose to avoid the "higher costs to patients and consumers" based on excessive product liability litigation. *Id.* The house report also discusses that excessive litigation can "reduce[] stock values," have a "stifling effect on product improvements," and that the statute of repose would "allow manufacturers to determine how long they [are] susceptible to suits." House Research Org., Tex. H.B. 4, at 39, 42, *available at* http://www.hro.house.state.tx.us/pdf/ba78r/hb0004.pdf. Defendants also cite *Burleson v. Liggett Group*, in which the Eastern District of Texas discussed the legislature's interest in limiting liability even where the plaintiff was a Texas resident and the defendant was an out-of-state corporation. 111 F. Supp. 2d 825, 829 (E.D. Tex. 2000).

With regard to Pennsylvania's interest in the litigation, Plaintiffs argue that Pennsylvania is a concerned jurisdiction because it has an interest in deterring manufacture of defective products and encouraging manufacturers doing business in Pennsylvania to exercise reasonable care. *See Henderson DeGrasse v. Sensenich Corp.*, No. 88-1490, 1989 WL 23775, at *3 (E.D. Pa. Mar. 15, 1989) (finding Pennsylvania had an interest in the case because its products liability law "include[d] the goal of deterring the manufacture of defective products by, and assigning responsibility for such an activity to, Pennsylvania manufacturers"); *see also Henderson v. Merck & Co.*, No. 4-5987, 2005 WL 2600220, at *6 (E.D. Pa. Oct. 11, 2005) (discussed below).

Defendants dispute this policy interest, citing Pennsylvania cases that have declined to apply Pennsylvania law to benefit out-of-state plaintiffs. The cases Defendants cite, however, did not find that Pennsylvania lacked any interest in the litigation; instead, they either assumed or found a true conflict – meaning they found that Pennsylvania and the other state both had interests in applying their laws – and then found that the other state had a greater interest or more connections to the dispute. *See Knipe v. Smithkline Beecham Corp.*, 583 F. Supp. 2d 602, 637-38 (E.D. Pa. 2008) (finding a real conflict in punitive damages laws, stating without any additional discussion that each state's "interests would be impaired by application of the other state's law," and weighing each state's contacts); *Blain v. Smithkline Beecham Corp.*, 240 F.R.D. 179, 195 (E.D. Pa. 2007) (stating that the parties agreed that there was an actual

conflict, and considering which state law should apply based on the significant relationship test).[11]

Furthermore, both parties cite *Henderson v. Merck & Co.*, in which the Eastern District of Pennsylvania found a true conflict between Michigan, Pennsylvania, New York, and New Jersey laws regarding drug liability. No. 4-5987, 2005 WL 2600220, at *6 (E.D. Pa. Oct. 11, 2005). The court rejected the plaintiff's argument that Michigan, the plaintiff's home state, "would have no interest in denying a Michigan citizen the opportunity to recover for wrongdoing [allegedly] committed by a number of out-of-state corporations," instead finding that Michigan also had an interest in reducing the "costs of FDA-approved pharmaceutical drugs for Michigan citizens and encouraging of pharmaceutical companies to do business in Michigan," and this interest was implicated because the defendants were national drug manufacturers who sold products in Michigan. *Id.* The court then found that Pennsylvania also had an interest in applying its more permissive scheme to the action because it had "a valid interest in deterring drug manufacturers who do business in Pennsylvania from negligently designing, marketing, and labeling prescription drugs" that "would be impaired by the application of Michigan law." *Id.*

---

[11] *See also Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 13-2436, 2015 WL 2417411, at *20-21 (E.D. Pa. May 20, 2015) (considering whether to apply Alabama or New Jersey law, finding a true conflict and that Alabama had more relevant contacts than New Jersey because it was the place of injury and marketing statements, and the decedent had no contacts with New Jersey); *A.B. v. Ortho-McNeil-Janssen Pharms.*, No. 649, 2013 Phila. Ct. Com. Pl. LEXIS 84, *77 (Pa, C.P. Apr. 4, 2013) (finding a true conflict in consumer protection statutes and weighing each state's contacts with the action).

The Court finds the reasoning in *Henderson* persuasive.  There is a true conflict here:  Pennsylvania has an interest in deterring drug manufacturers who do business in the state from failing to warn about the dangers of their products, and Texas has an interest in reducing excessive litigation that can result in higher healthcare costs and delay product improvements.

Because both states have an interest in applying their law to these cases, the Court proceeds to the next step, and will apply the law of the state with "the most significant contacts or relationships" with the dispute.  *Taylor*, 265 F. App'x at 91.  Pennsylvania's only connection to the dispute is that some defendants are incorporated there; whereas, the plaintiff resided in Texas at all relevant times, including the time of injury.  Thus, the Court finds that Texas has the most significant relationship to the dispute.  *See Henderson*, 2005 WL 2600220, at *7-8.  Accordingly, the Texas-resident plaintiffs' claims are barred by the Texas statute of repose, and the Court will grant Defendants' motion to dismiss their claims.

## IV.    OREGON STATUTE OF REPOSE

Defendants argue that the claims of the Oregon-resident plaintiff, who filed in Oklahoma, are barred by Oregon's statute of repose.  The determination of this motion depends on the proper application of Oregon law.[12]  Oregon's statute of repose states:

> A product liability civil action for personal injury or property damages must be commenced before the later of:

---

[12] Plaintiffs concede that Oregon law governs this plaintiff.  (Pls.' Mem. in Opp'n at 10.)

>    (a)   Ten years after the date on which the product was first purchased for use or consumption; or
>
>    (b)   The expiration of any statute of repose for an equivalent civil action in the state in which the product was manufactured, or if the product was manufactured in a foreign country, the expiration of any statute of repose for an equivalent civil action in the state into which the product was imported.

Or. Rev. Stat. § 30.905(2). Subsection (b), referred to as the "look away" provision, was added in 2009, and allows claims that would be time-barred by the Oregon statute to proceed if they would be allowed in the state of manufacture. *See* 2009 Or. Laws, ch. 485, § 2. Plaintiffs contend that it is too early to dismiss the Oregon-resident plaintiff's claims until the parties learn the location of manufacture and the Court can consider the law of that jurisdiction. However, the "look away" provision applies "only to causes of action that arise on or after the effective date" of the amendment. *Id.* It appears no Oregon court has interpreted this language, and determined when causes of action "arise" in this context. Defendants argue that the cause of action arises on the earliest date that the plaintiff would have been entitled to sue, likely meaning the date of the tortious act or the date of injury. Plaintiffs counter that the cause of action arises when the plaintiff learns of the harm against them.[13]

Defendants cite *Piukkula v. Pillsbury Astoria Flouring Mills Co.*, in which the Oregon Supreme Court stated that "the cause of action arises, not when the entire scope

---

[13] In Plaintiffs' briefing, they argued that the cause of action arises when the action is filed, (Pls. Mem. in Opp'n at 11 n.9); however, they conceded at oral argument that this argument was mistaken, and argued instead that the cause of action arises when the plaintiff learns of the harm, allowing them to bring a cause of action.

of the injury has revealed itself, but when the tortious act occurred." 42 P.2d 921, 928 (Or. 1935). However, the court also stated that this rule "is of universal application except where the guilty party fraudulently conceals the existing cause of action." *Id.* at 929. Additionally, several more recent Oregon Supreme Court decisions have found that a cause of action "accrues" when the plaintiff knew or should have known about the claim, rather than when the plaintiff was injured or suffered the tortious act. *See Abraham v. T. Henry Const., Inc.*, 249 P.3d 534, 536 n.3 (Or. 2011) ("Tort claims ordinarily accrue when the plaintiff discovers or should have discovered the injury."); *Berry v. Branner*, 421 P.2d 996 (Or. 1966) (finding that "the cause of action accrued at the time plaintiff obtained knowledge, or reasonably should have obtained knowledge of the tort committed upon her person by defendant").

Defendants argue that it would be improper to apply a discovery rule because the Court is considering a statute of repose, rather than a statute of limitations – however, this argument is flawed. The Court is not interpreting when Oregon's statute of repose begins to run; rather the Court is interpreting whether a plaintiff's cause of action arises on or after the effective date of the amendment to the statute of repose. The language used in the amendment, considering when a cause of action arises, in fact is more like the language used in a statute of limitations, rather than a statute of repose.[14] Thus, it is

---

[14] A statute of limitations is based on when a cause of action accrues, which can be based on when the plaintiff discovers the injury; whereas, a statute of repose generally runs "not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant." *CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2182 (2014).

proper to consider how Oregon courts interpret similar language, not just how Oregon courts interpret a statute of repose.

The Oregon cases discussed above suggest that there are likely additional considerations for determining when a cause of action arises aside from solely when the injury or harmful act occurred. Thus, the Court rejects Defendants' argument and finds that there are not sufficient facts before the Court to determine that the Oregon-resident plaintiff's claims arose under Oregon law prior to the effective date of the amendment. Additional facts may later justify dismissal of the Oregon-resident plaintiff's claims as barred by Oregon's statute of repose, if they show that the causes of action arose prior to the effective date of the amendment or disclose a location of manufacture with a statute of repose that would also bar the action. At this time, however, the Court will deny Defendants' motion to dismiss the Oregon-resident plaintiff's claims because, based on the record before the Court, it is not clear that the Oregon-resident plaintiff's claims arose prior to the effective date of the amendment.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [MDL No. 15-2642, Docket No. 235] is **GRANTED in part** and **DENIED in part** as follows:

1. The motion is **DENIED** with regard to Illinois-resident and Oregon-resident plaintiffs. Accordingly, the following motions to dismiss in cases involving the Illinois-resident and Oregon-resident plaintiffs are **DENIED**:

    a.    Michael Cepuran v. Bayer Healthcare Pharmaceuticals, Inc., et al., [Civil No. 15-3595, Docket Nos. 27, 30];

    b.    Rhonda Cervantes v. Bayer HealthCare Pharmaceuticals, Inc., et al., [Civil No. 16-1443, Docket No. 7];

    c.    Deborah Haney v. Bayer Healthcare Pharmaceuticals, Inc., et al., [Civil No. 16-1501, Docket No. 7];

    d.    Arturo Rendon v. Bayer Healthcare Pharmaceuticals, Inc., et al., [Civil No. 16-1515, Docket No. 7].

2.    The motion is **GRANTED** with regard to Texas-resident plaintiffs and the plaintiff who has not opposed the motion. The following motions to dismiss involving the Texas-resident plaintiffs and the plaintiff that has not opposed the motion are **GRANTED**:

    a.    Alan Henness, et al. v. Johnson & Johnson, et al., [Civil No. 15-3417, Docket Nos. 20, 23].

    b.    Gladys Wilson v. Bayer Healthcare Pharmaceuticals, Inc., [Civil No. 16-1571, Docket Nos. 4, 7].

3.    The Clerk of Court is **DIRECTED** to enter judgment on the following cases: Civil No. 15-3417, and Civil No. 16-1571.

DATED: February 21, 2017　　　　　　　　　　　　s/ John R. Tunheim  
at Minneapolis, Minnesota.　　　　　　　　　　　　JOHN R. TUNHEIM  
　　　　　　　　　　　　　　　　　　　　　　　　　Chief Judge  
　　　　　　　　　　　　　　　　　　　　　　United States District Court